TAYLOR, J.
Appellant, Larry Harden, appeals his convictions for sexual battery, false imprisonment, and domestic battery. Because the trial court abused its discretion in admitting evidence of a prior incident of domestic violence that served only to show propensity, we reverse for a new trial. We also write to address an evidentiary issue likely to arise again on retrial.
Appellant was accused of beating and raping his then-girlfriend, K.W., in a motel room following an argument in which appellant accused K.W. of sleeping with someone else. Before trial, the prosecutor notified the trial court that he intended to ask K.W. about her relationship with appellant, including a prior domestic violence incident that occurred about six months before the alleged rape. Defense counsel objected to evidence of the prior incident on grounds of relevance, prejudice, and lack of notice. Defense counsel further argued that the standard was not merely whether there was relevancy, but whether the prejudice outweighed the probative value. The trial court found that the evidence was admissible as probative of appellant’s motive and intent, relying on Nicholson v. State, 10 So.3d 142 (Fla. 4th DCA 2009). Evidence of the prior act was admitted at trial. The jury convicted appellant of sexual battery, false imprisonment, and domestic battery.
On appeal, appellant argues that the trial court abused its discretion in admitting evidence of the prior act of physical violence towards K.W. The state suggests that this issue was not preserved because appellant raised only a “leading” objection at trial when the prosecutor asked about the prior incident and because appellant did not specifically argue that the victim’s testimony was “evidence of other bad acts which served only to show propensity to commit crime.” On the merits, the state argues that the evidence of the prior incident was relevant to establish appellant’s intent and motive.
As a preliminary matter, we find that this issue was preserved. Notwithstanding the fact that defense counsel did not use the magic word “propensity,” it is apparent that defense counsel’s articulated concern was sufficiently specific to inform the trial court of the alleged error. See Conner v. State, 987 So.2d 130, 133 (Fla. 2d DCA 2008) (explaining that “no magic words” are required when making an objection and that an issue is preserved for appeal if the attorney’s articulated concern is sufficiently specific to inform the court of the alleged error). Moreover, defense counsel’s pretrial arguments were sufficient to preserve this issue for appellate review where the trial court made a definitive ruling on the record. See McWatters v. State, 36 So.3d 613, 627 (Fla.2010) (“Moreover, McWatters preserved his objection for review by obtaining a pretrial ruling on the admissibility of the evidence.”); § 90.104(1), Fla. Stat. (2009) (“If the court has made a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party *1246 need not renew an objection or offer of proof to preserve a claim of error for appeal.”).
Turning to the merits, we first note that a trial court’s ruling on the admissibility of evidence is reviewed for an abuse of discretion. McCall v. State, 941 So.2d 1280, 1283 (Fla. 4th DCA 2006). The trial court’s discretion, however, is limited by the rules of evidence. Id.
Relevant evidence is evidence tending to prove or disprove a material fact. § 90.401, Fla. Stat. (2009). Generally, any evidence relevant to prove a fact at issue is admissible unless precluded by a specific rule of exclusion. See State v. Williams, 992 So.2d 330, 333 (Fla. 3d DCA 2008); see also § 90.402, Fla. Stat. (2008). However, even if evidence is relevant, it is inadmissible “if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.” § 90.403, Fla. Stat. (2009).
Similar fact evidence of collateral crimes, wrongs, or acts “is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.” § 90.404(2)(a), Fla. Stat. (2009). Thus, evidence of other crimes is admissible where such evidence “tends to disprove a defendant’s theory of defense or attempt to explain his intent.” Gould v. State, 942 So.2d 465, 467 (Fla. 4th DCA 2006).
Evidence of other crimes is not, however, limited to other crimes with similar facts. See Sexton v. State, 697 So.2d 833, 836-37 (Fla.1997). “[Ejvidence of bad acts or crimes is admissible without regard to whether it is similar fact evidence if it is relevant to establish a material issue.” Pittman v. State, 646 So.2d 167, 170 (Fla.1994). As our supreme court explained:
So-called similar fact crimes are merely a special application of the general rule that all relevant evidence is admissible unless specifically excluded by a rule of evidence. The requirement that similar fact crimes contain similar facts to the charged crime is based on the requirement to show relevancy. This does not bar the introduction of evidence of other crimes which are factually dissimilar to the charged crime if the evidence of other crimes is relevant.
Bryan v. State, 533 So.2d 744, 746 (Fla.1988).
In Dennis v. State, 817 So.2d 741 (Fla.2002), the Florida Supreme Court held that the trial court properly admitted evidence that the defendant previously stalked, threatened, and assaulted the woman whom he was charged with murdering. In affirming the admission of the evidence, the court cited Sexton and held that “the nature of Dennis’s relationship with the victim was relevant to establish Dennis’s motive.” Id. at 762.
Accordingly, even if prior bad acts do not bear a striking similarity to the charged offenses, the prior acts are admissible if they are relevant to show motive and intent. See Nicholson, 10 So.3d at 145-16 (holding that, in the defendant’s trial for the murder of his ex-wife, evidence of the defendant’s prior bad acts committed against victim were admissible to show the defendant’s motive and intent even though they were not sufficiently similar to the charged offense to warrant introduction for purposes of identity); State v. Wright, 74 So.3d 503, 505-06 (Fla. 2d DCA 2011) (holding that, in the prosecution of the defendant for armed kidnapping of the victim, evidence of the defendant’s *1247 prior acts of domestic violence against the victim was relevant to the issues of motive and intent, and that the probative value of the evidence outweighed the prejudicial effect).
However, where intent or motive is not a material fact at issue, the collateral crime evidence cannot be admitted for the purpose of showing intent or motive. See Pratt v. State, 1 So.3d 1169 (Fla. 4th DCA 2009). In Pratt, this court held that in a prosecution for aggravated battery of the defendant’s wife and daughter, it was error to admit evidence of three prior beatings of the wife by defendant during the preceding eighteen months. We explained:
In the circumstances of this case, these earlier incidents of violence do nothing more than demonstrate his propensity for violence with his family members. Neither party did anything to make motive or intent significant to any contested fact. No one suggested any factual issue as to a specific reason for battering the two women. Nor did he claim that his actions were by mistake. Motive, intent and mistake were simply not made pertinent issues in the trial.
Id. at 1170 (emphasis added); accord Herbert v. State, 526 So.2d 709 (Fla. 4th DCA 1988) (in prosecution for aggravated child abuse, error to admit evidence of an earlier beating of the same child; there was no dispute at trial as to the identity, motive, or knowledge of the defendant in beating her son with a belt, and the only issue in dispute was whether or not the beating constituted a crime).
Here, unlike in a murder case such as Nicholson, motive and intent were not particularly pertinent issues in the trial. As our supreme court has explained: “State of mind is not a material fact in a sexual battery charge, nor is intent an issue.” Coler v. State, 418 So.2d 238, 239 (Fla.1982). Likewise, the Second District has held that, in a prosecution against the defendant for sexual battery of his then spouse, it was error to admit a prior incident in which the defendant slapped his spouse, “because the perpetrator’s state of mind is not an issue in a sexual battery case.” Hebel v. State, 765 So.2d 143, 145 (Fla. 2d DCA 2000).
In the case at bar, the earlier incident of domestic violence did nothing more than demonstrate appellant’s propensity for violence against his girlfriend. The primary contested fact in this case was whether appellant’s girlfriend consented to the sex; appellant’s motive or intent was not significant to any contested fact. See id. at 145. Even if the prior domestic violence incident had some marginal relevance in showing why K.M. delayed reporting the alleged sexual battery, this relevance was substantially outweighed by the danger of unfair prejudice. The prior bad act was unfairly prejudicial because it was classic propensity evidence that showed appellant’s bad character. Furthermore, on this record, we cannot say that the error was harmless. See Goodwin v. State, 751 So.2d 537, 547 (Fla.1999) (erroneous admission of collateral crimes is presumptively harmful error); State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986) (“The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.”).
Appellant also argues that the trial court reversibly erred in refusing to allow him to question K.M. regarding MySpace messages she sent to appellant’s new girl *1248 friend after the alleged sexual battery occurred, thereby denying him a full and fair opportunity to cross-examine the witness about her bias or motive to be untruthful. We address this issue for the benefit of the trial court upon retrial.
Before trial, appellant filed a notice to admit business records regarding messages sent — after the alleged rape — from the MySpace account of the alleged victim, K.W., to appellant’s new girlfriend, Kayla. The state moved in limine to preclude the admission of the MySpace messages, and the trial court held a hearing on the matter. At the heai'ing, K.W. admitted in her testimony that she sent the messages over MySpace to Kayla. In the messages, K.W. told Kayla, among other things, that she was “ugly” and that her “vagina was like a swimming pool.” K.W. also wrote that “I’m too beautiful for you to compete, you look like a F’g gorilla, for real dog, you should try something about that shit, Larry is ... a F-boy.” K.W. also admitted that one of the messages stated that, “Larry’s ladies, you hoes don’t stand a chance.” K.W. claimed that she sent the messages in response to messages from Kayla. K.W. explained that Kayla had threatened to beat her up and even followed her home after appellant’s first court appearance. K.M. testified that she wrote the messages to let Kayla know she would not be intimidated.
Defense counsel argued that the messages were relevant to KW.’s credibility because they were sent within weeks of the alleged sexual assault and supported the defense theory that the alleged victim was a jealous ex-girlfriend. Defense counsel claimed that “we asked MySpace for everything, and they sent us what they said they had.” Defense counsel admitted the defense had received the messages in 2008 from MySpace, and that the messages were not turned over to the prosecution until the Tuesday or Wednesday before trial.
At the end of the pretrial hearing, the trial court ruled that K.W.’s MySpace messages were inadmissible because 1) the prejudice of the messages outweighed their probative value, 2) the messages, which the defense had subpoenaed, were not turned over to the prosecution in a timely manner, and 3) the rule of completeness precluded the admission of the messages because “some of these emails are clearly responsive to other emails, and without having those other emails, they are out of context.”[1]
While a trial court’s evidentia-ry rulings are reviewed for an abuse of discretion, it is also “clear that a defendant in a criminal case has a constitutional right to a full and fair cross-examination of his accuser.” Taylor v. State, 623 So.2d 832, 833 (Fla. 4th DCA 1993). A party may *1249 attack the credibility of a witness by showing that he or she is biased. Id.; Chatman v. State, 687 So.2d 860, 862 (Fla. 1st DCA 1997). “The courts have repeatedly held that a defendant has the right to fully cross-examine a State’s witness to reveal bias and any improper motive the witness may have had in testifying against the defendant.” Powe v. State, 413 So.2d 1272, 1273 (Fla. 1st DCA 1982). However, “[e]vidence of bias may be inadmissible if it unfairly prejudices the trier of fact against the witness or misleads the trier of fact.” Breedlove v. State, 580 So.2d 605, 609 (Fla.1991).
Here, we find that the MySpace messages were relevant because they demonstrated bias and supported the defense theory that K.M. was a jealous ex-girlfriend with a motive to lie. Moreover, we cannot agree with the trial court’s conclusion that the probative value of the messages was substantially outweighed by the danger of unfair prejudice. Here, while K.M. may be embarrassed that she sent the messages, we fail to see how the messages were unfairly prejudicial to the state.
Furthermore, because we are ordering a new trial, the prosecution will not be unfairly surprised by the messages. Thus, the issue as to whether the defense failed to timely turn the messages over to the prosecution is now moot. We do, however, address the “rule of completeness,” which was the trial court’s final basis for excluding the messages.
The rule of completeness is codified in section 90.108(1), Florida Statutes (2009), which provides that “[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him or her at that time to introduce any other part or any other writing or recorded statement that in fairness ought to be considered contemporaneously.” The purpose of the rule is to avoid the potential for creating misleading impressions by taking statements out of context. Larzelere v. State, 676 So.2d 394, 401 (Fla.1996). However, the rule of completeness has not been interpreted to require exclusion of evidence where only portions of a written or recorded statement are available. See, e.g., State v. Hall, 194 N.C.App. 42, 50-51, 669 S.E.2d 30, 36-37 (2008) (explaining that even where portions of a statement are inaudible or inadvertently destroyed, the rule of completeness has not been interpreted to require exclusion of the remaining portions of the statement; the court may in its discretion admit the other portions of the statement); United States v. Thompson, 2009 WL 331482 (E.D.Ky.2009) (finding the rule of completeness inapplicable where the government introduced a thirty-second news clip featuring portions of a reporter’s interview of the defendant that lasted almost thirty minutes; the government was not in possession of the entire interview, the other portions of the interview were unavailable, and the fact that the defendant may have said something else during the interview did not implicate the rule of completeness).
Here, if the parties are able to produce the MySpace messages that Kayla sent to K.W., then those messages should be admitted — alongside KW.’s MySpace messages — under the rule of completeness. However, if Kayla’s MySpace messages to K.W. are unavailable, the rule of completeness does not mandate the exclusion of the messages that K.W. sent to Kayla. Rather, the state may elicit testimony that K.W.’s MySpace messages were sent in response to threatening messages from Kayla. See United States v. Bellomo, 176 F.3d 580, 586 (2d Cir.1999) (statements offered as evidence of commands or threats directed to the witness, rather than *1250 for the truth of the matter asserted, are not hearsay); see also State v. Holland, 76 So.3d 1032, 1034 (Fla. 4th DCA 2011) (“Verbal acts are not hearsay because they are admitted to show they were actually made and not to prove the truth of what was asserted therein.”). This solution will avoid the potential for creating a misleading impression and will allow the jury to accurately perceive the entire context surrounding K.W.’s MySpace messages.
In summary, we reverse appellant’s convictions and remand for a new trial consistent with this opinion.

Reversed for a new trial.

CIKLIN and GERBER, JJ., concur.

. To the extent that the trial court may have believed the messages should also be excluded as hearsay, the trial court was incorrect. Subsection 90.801(l)(c), Florida Statutes (2009), defines “hearsay” as a “statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” The Florida Supreme Court has recognized that a statement may “be offered to prove a variety of things besides its truth.” Foster v. State, 778 So.2d 906, 914-15 (Fla.2000). When a statement is not offered for the truth of its contents, but to prove a material issue in a case, it is not hearsay. Id. at 915. One recognized non-hearsay use of an out of court statement is to "show motive.” Eugene v. State, 53 So.3d 1104, 1109 (Fla. 4th DCA 2011). Here, appellant is correct that the messages were non-hearsay because they were not being offered for the truth of the matter asserted — e.g., that appellant’s new girlfriend was ugly — but rather were being offered for the non-hearsay purpose to establish that the victim was a jealous ex-girlfriend.